14-3959 William Sharp v. James Proffitt, et al., oral argument, 15 minutes per side. Mr. Willis for the appellant. May it please the court. My name is Ted Willis. I'd like to reserve five minutes of my time. Fine. We have, in this case, the first claim we have is a workers' comp retaliation claim, and the court is, I'm sure, aware we filed a motion to hold the decision in abeyance pending the outcome of an Ohio Supreme Court case that deals with the first prong of that workers' comp retaliation claim. But just to go ahead with the arguments related to that, the issue on the first prong is whether a plaintiff has to establish a workplace injury to have a workers' comp retaliation claim or merely has to engage in protected activity. So the protected activity would be, for instance, filing a workers' comp claim. I don't understand how this could be workers' comp retaliation regardless of the question about whether you have to have been injured or not. He goes off to have his back operation. He comes back. They put him back to work. Now, at that point, they don't know he's going to file comp, but it seems to me here they don't fire him until after he refuses to fill out the forms. Well, Your Honor, the whole incident with the firing took place at the same time they found out about the workers' comp claim. And the first thing they said to him when he filed the workers' comp claim, or when they found out, was you don't have a right to file workers' comp. So that negative reaction related to filing the workers' comp claim creates an inference of a causal relationship between filing the workers' comp claim and his termination. Didn't they tell him he didn't have the right to file comp because he hadn't been injured on the job? Well, then it becomes a dispute as to whether the workers' comp claim is meritorious or not. But the triggering event for his claim was filing the workers' comp because the first thing they said, you don't have a right. They dispute. But he filed, which is protected activity, and so that should create a workers' comp retaliation claim. The defendants cite a case, for instance, Wilson v. Riverside, which states that a prima facie case can be created by stating a workplace injury. But this Wilson v. Riverside is a completely different scenario because the issue in that was merely whether the plaintiff had created or had established a 12B6 claim for workers' comp retaliation by stating that he had a workplace injury. Let's assume that he had reported this injury, they knew it was work-related, he had filed his comp claim, he comes back to work, and then there are forms that he has to fill out for whatever reason, and he refuses to fill out the forms. Are you saying they can't fire him because of that, because it would be workers' comp retaliation? Well, I think that that goes to the public policy claim for the right to consult an attorney. Now, in this case, that issue... I didn't say anything about consulting an attorney. I said he comes in and they ask him to fill out a couple forms and he refuses. Would that person, in my hypothetical, be protected by workers' comp retaliation theories? In your hypothetical, are you saying that he does not ask to consult with an attorney before filing it? You heard what I said. Well, I just want to make sure I understand the facts. I think you're saying he didn't ask for an attorney. I would say that if he had filed for workers' comp and they asked him to fill out workers' comp claims, workers' comp forms, and he refused, I think that that, even though that's not anything to do with the facts of this case, I think that his participation in the workers' comp process would be enough to invoke the workers' comp retaliation claim and that if they fired him for him refusing to participate in a workers' comp claim on the job, that that would create a workers' comp retaliation claim. But that's not the issue here. The issue here... Or he wants the attorney to be there when he's filling out the forms. You don't have a right to an attorney in your office. We never asked for a right and they were very clear in their depositions that they understood that we had not asked to have the attorney in the office. The issue with having the attorney involved, it goes to the right to consult with an attorney related to a matter related to your employment. And in this case, the defendants had a form that they wanted him to fill out that was going to the absolute core of his workers' comp claim and to their absolute core of the defense of their workers' comp claim, which they were going to use that form to go and consult with their attorney to prepare for the workers' comp administrative claim. And he wanted to consult with an attorney. Normally, workers' comp is a state law matter. So is there Ohio law that says that a workers' comp claimant has a right to a lawyer in filling out his workers' comp claim forms? Well, I would say that that is part of the Ohio public policy right to consult with an attorney. And that's where it would fit, would be into this public policy claim. So has any Ohio court held this? Well, no. This issue has not come up. But the courts say that you have a right to consult with an attorney related to matters related to your employment. And this was... So you have a case that would say that when your employer wants you to fill out a form having to do with some employment issue, you can refuse to do it and say that you need to consult with a lawyer? There is not a case. But the cases are written broadly enough, and the policy of those cases are broad enough to bring that within the facts of this case. Chapman versus Adia. I think it's fascinating that you rely upon policy because essentially you're saying Ohio's public policy is to inject attorneys into routine workplace matters. And I'm trying to figure out why this isn't just simply the routine workplace matter. What happened? Write it down on the form and turn it into us. Because it's not a routine workplace matter, Your Honor, because it's the core issue related to their workers' comp claim. What were they asking him to do that required or triggered the need for a lawyer? Describe the facts that led to his workers' comp claim, which is... So if somebody gets hurt on the job, you can't make them fill out a form without them just saying what happened, without consulting with an attorney first? I think under the circumstances where he has an attorney, and he has filed a workers' comp claim, and the defendants are using that form to prepare for a workers' comp hearing with their attorney, that that goes so deeply to the substance of the case that he has a right to consult with an attorney. So the key thing then, when you're asking for a more limited principle than some of these discussions have indicated, the key in your view is that he has already filed a workers' comp claim. And the new thing that he's being asked to do is to fill out the employer's internal accident report form, because he didn't report his accident when it happened. Well, the fact is he did report it when it happened. He reported it orally to the wrong person, or the person wasn't there. That's right. He did report it. He followed the rules to report. At that point, it's their responsibility to present him with an incident report to fill out. And so would he have been entitled to a lawyer right then? I would say in this case, I would say no, because he had not filed a workers' comp claim. He didn't have an attorney. They had an attorney. They were preparing that report to take to their attorney to prepare for the administrative hearing. So if you conceal it and file a comp claim, and then they ask you to fill out the form, you get a lawyer. If you don't conceal it, then you don't get a lawyer when you fill out the form. Would you think that's consistent with Ohio public policy? Your Honor, in this case, he did not conceal it. He reported it. And it is strictly a question of fact as to whether he reported it or not. The waste management rules say that you report an on-the-job injury by having one or two passing conversations unsuccessfully with your supervisor, and then you stop your attempts to fill out a form. Is that what it says? The rule says report to your supervisor, and in this case, he did report to his supervisor, Lane and then Saunders. He knew there were forms to fill out, right? The forms are provided by the company. Because he had filled out the forms in other instances. Yes, that's right, but it's the company's responsibility to provide the form, and they did not do that. And they have a history in multiple circumstances. I find no place in the record that said he asked for – well, first of all, he knew there was a form, right? Because he had done it before. He had seen those reforms. Does the record reflect that he ever asked for a form? His attempts to report – Did he ask for a form? He reported in an attempt to ask for a form, and they blew him off. That was waste management's modus operandi. Their process was to ignore these injuries – How many times is enough to have asked and been blown off to satisfy your obligations under their policies, in your estimation? Okay. I think under the rules of evidence, 404B, if you have similar circumstances that show a pattern in policy by the employer, that that's enough to create an inference that they are blowing off and ignoring people's injuries. And in this case, we have multiple incidents of them not filing incident reports when they knew that there were incidents, and we have multiple instances of people coming to them with injuries and the supervisors ignoring them. The supervisors had an incentive to ignore them. How many comp claims did this individual file? Sharp? One. He'd only been on comp once? That's right. Because previously – Did he get blown off that time? This was it. Well, this is the only – This is it. All these prior ones didn't result in a comp claim, is that it? That's right. Okay. You answered the question. Thank you. You have evidence in the record that he had been told not to file workers' comp claims in the past when he suffered injuries, and he had suffered serious injuries in the past where he had taken time off but hadn't filed workers' comp, and those were workplace injuries? Absolutely. In 2010, the elbow injury was work-related. It was reported as work-related. The FMLA form says work-related injury, but his supervisor at that time, Krieger, told him, don't report this as workplace or you'll get fired. So he went with waste management's policy, which is don't report it as workers' comp. So he went with FMLA leave, which was unpaid? Yes. Is that right? Well, I think it was – I don't know whether it's paid or not paid, but he certainly did go FMLA. But it was work-related, and it was reported as work-related, and he was told not to. Well, there's no reason to file comp if you're being paid, right? Yes, Your Honor. Workers' comp goes to multiple issues. I mean, you have permanent partial. You have temporary total. You have wage loss. All of these things have implications to the workers' comp system that are not necessarily available just through FMLA. And so workers' comp gives you a – Forget that. FMLA is unpaid. I'm saying if waste management was paying him these other times that he was off to get better, then would there still have been a reason to file comp claims in these other instances? Yes, because you have the possibility of, say, wage loss and permanent partial, which are workers' comp remedies that are necessary. You don't understand? I just said in my question that they were paying him if they were paying him. Your Honor, permanent partial and wage loss are remedies that are greater than the time period of paying when you're off on workers' comp. Okay, that's all I'm asking. Okay, that's the reason. Just say yes. One last – I just want to make sure my memory of something is correct. When you were talking about the attorney, my recollection is that he did consult with the attorney, and two days later I think it was they asked him to fill out the form, and he again refused. Is that correct? Your Honor, he consulted with the attorney. The attorney sent a letter saying he's asked to fill out some form related to workers' comp. And at that point we didn't know whether the form was related to termination or exactly what the form was, and the attorney from defendants, waste management, wrote a letter saying don't contact the waste management officials, go all through me and I'll provide a response. So while waste management was directing Sharp and his attorney not to contact the waste management officials and promising to come back with a substantive response, they then pulled him into a meeting, said sign this document, which went to the substance of the workers' comp. claim, and he had asked for an attorney to consult whether this is properly done, and then without providing any kind of response and telling him not to consult with officials, they fired him. Okay. Is the short answer to my question that yes, he was asked to sign the form after consulting with the attorney, but the attorney said don't sign the form? Your Honor, if you look at the letter, the attorney said yes, it would be. Don't sign what you don't know what it is. So the second time they asked him, it wasn't that he didn't consult with the attorney, it was the advice of the attorney that he said, the attorney told me not to sign this. I think the advice was don't sign something you don't know what it is when it relates to a substantive issue of your case.  Thank you. Thank you. Good morning, Your Honors. Good morning. May it please the Court, my name is Deborah Brenneman, with the law firm of Thompson-Hein, representing the defendants in this matter. I first wish to clear up a couple of points from the record that Mr. Wills addressed, and following up on a few questions from Your Honors.  that Mr. Sharpe did report the injury at the time. And I just want to be clear that the record is clear that he did not actually report. Mr. Sharpe testified in his deposition that on the day the injury allegedly occurred, that Mr. Lane, who was there at the time, who was not his supervisor, had his radio turned off and he was not able to contact him. That was Mr. Sharpe's testimony. Mr. Sharpe testified that the next day he attempted to approach Mr. Lane, who again was not his supervisor, and Mr. Lane blew him off. He said when his own supervisor, Mr. Saunders, returned to work a couple of days later, in his testimony, he tried to approach him and he says Mr. Saunders blew him off. Mr. Sharpe knew very well how to fill out the forms, had just filled one out earlier that year, and Mr. Sharpe admitted that he did not request a form from either of those two or the district manager, Mr. Proffitt, or the HR director, Ms. Bush, or anyone else whatsoever at Waste Management. Where is the employee supposed to get the form? The form actually is available either from the supervisor or from the dispatch office. There's a dispatch desk within the facility, and they can obtain them from there as well. So that form is readily obtainable, and Mr. Sharpe admitted that he did not obtain that form and did not actually proceed with reporting the incident. Did you say a moment ago that he had gotten that form or some similar form in an earlier instance? Yes, in January of that year he had completed exactly that type of incident form. He had also completed it in 2009. That was a comp? No, these are not, let me be clear, these are not comp forms. This is just a simple workplace injury form, and it appears in the record it's attached in the summary judgment or in the briefing. Just so I understand, where Mr. Willis is saying this is the first time he ever filed comp, you're directing us to simply an accident report form, and he had filled that out several times before? That's correct. So he knew where to get that and how to do that? That's correct, Your Honor. All right. And really the form asks only two things, what date did this occur, and explain briefly what happened. So, of course, at that point Mr. Sharp, unbeknownst to waste management, had already filed a workers' comp claim that outlined what happened. He could well have repeated that. When did he file the workers' comp claim? In August of 2012. So this was now October of 2012 when waste management first learns about it. Okay, but I thought we were talking about his not getting the form from waste management. Yes. And the accident occurred when? He alleges that the accident occurred in March. In March? Yes. So he didn't file for workers' comp until August. That's correct, Your Honor. And if you will recall from the record, he alleges that he was injured on March 27th. The first time he sought treatment was not until April. And then, of course, we have all the physician's records, insurance records, short-term disability records, which all indicate through that time period that this was not a work-related injury. Took FMLA leave to have back surgery for this condition. Again, indicated it was not a work-related injury. And it was only after. So the surgery was in May. Now it's August. Without telling waste management, he files a workers' comp claim. The first time waste management has any idea that he's suggesting there wasn't even an injury was on October 23rd. And what happened, of course, is that waste management has an administrative service that records time off for various employees. And this is called TOPS, time off planning services. TOPS sent an email and notified them that Mr. Sharp had reported a recent absence as being work-related and said, basically, what's going on? We don't have a workers' comp claim on file for this. And that's the way waste management first was notified, that either he believed that this was a workplace injury if it occurred or that he had filed a workers' comp claim. You go ahead. One of the problems, it seems to me, though, is that when you analyze everything separately, there's an answer for this or an answer for that. But particularly as to the retaliation claims, there is a thread that, with the exception maybe of the ADA claim, which I personally don't think has any value at all, but that's not the point I'm getting to, is that it was common knowledge that if you filed a workers' compensation claim with waste management, you were in trouble. And although you say he knew where to get the form, when everybody you try to report an accident to, to use your term, blows you off or whatnot, it gets into sort of the credibility aspect, which to me doesn't say who wins or loses, but does cast some question mark as to whether the record is such that it was appropriate for summary judgment. Let me address that in a few ways, Your Honor. First of all, I think a review of the record indicates that even several of the individuals that Mr. Sharp testified about or claimed were comparators, which I think were not truly comparators, had filed workers' comp claims and still do work at waste management. Mr. Sharp himself points to only one instance in which he claims he was told that he should not file a workers' comp claim. And he says that a former employee named Joe Krieger was the one who said when he came in to fill out, he had tendinitis at the time and was going to take FMLA leave. Mr. Sharp claims that Mr. Krieger said not that he shouldn't file workers' comp or that he would be fired for it. Mr. Sharp in his testimony, and this is outlined in our briefs, Mr. Sharp admits that no other manager at waste management ever told him that. He admits that no other employee at waste management ever told him that. He refers exclusively to Joe Krieger who, and by the way, he referenced that he was his manager at the time, that particular FMLA issue, I believe, was from 2009. And Mr. Sharp testified in his deposition that Mr. Krieger, and that was on page 6, he started in 2007 with waste management, and Mr. Krieger was only his supervisor for about seven months before he then became under the supervision of Mr. Saunders. So at that time, Mr. Krieger was not his supervisor. But as outlined in the brief, Ohio law says that you cannot point to a comment of another supervisor relating to another injury to try to establish workers' compensation retaliation with regard to a separate issue. Well, all of that may be true, but it's pretty clear from, for the moment, if you believe his testimony, telling doctors, for heaven's sakes, don't mention work-related injury when you're writing this up, and so forth. Right or wrongly, he had the perception that filing workers' compensation claims was a no-no. Well, what he may have thought internally, and I would suggest that if you look at the credible evidence in the record, that's probably not what was going on. But what he may have thought internally but not discussed with waste management does not impact waste management's actions when it's undertaking a decision based upon its evaluation of the facts before and its belief. And the facts before it were twofold, really. One, it had these safety rules, these rules regarding reporting, which are set forth not once but twice in the employee handbook. It had these rules that everyone, including Mr. Sharp, recognized were very important rules and that you could be fired for not reporting incidents. And, in fact, Mr. Krieger, who I was just speaking of, he was the one who was later terminated because he did not report an incident. He had not taken workers' comp. He did not have any alleged disabilities. He had not talked to an attorney. He was trying to cover up an issue with one of his employees. Mr. Saunders found out about it, reported it, and he was fired for not reporting an incident. So that's really the only true comparator you have here. But we have these rules that everyone recognizes are important. Mr. Sharp recognized were important. Mr. Sharp recognized were critical to the company that need to be followed. And yet he, number one, did not, even looking at his testimony, did not initially report the incident, did not report it after he had surgery, did not report it after he had workers' comp, and even when it came to waste management attention, then refused to fill out the simple form with waste management facing and workers' comp hearing a couple of days away. Suppose hypothetically that waste management did have a policy that they did not want their workers to file workers' comp claims, and suppose that, in fact, Sharp is giving truthful evidence in whatever form, deposition or whatever, that he did not report because he believed that he would be fired because of statements that other people, such as Supervisor Krieger, had made to him about not filing. Wouldn't there be a genuine issue of material fact as to whether, given the time frame of the firing here, whether Sharp was being fired for his actually filing a workers' comp claim as opposed to for his refusing to fill out the form? Well, I think if you had a policy in place that... But hypothetically. Hypothetically. Well, a policy in place that said we don't want you to file workers' comp claim would certainly be a chilling effect upon folks firing a workers' comp claim, and I suppose theoretically in that situation you could say that the reasons offered could be perceived as pretextual, but that's a much different factual scenario than the undisputed facts revealed in this particular case. Let me follow up on that for just a second. I think I've been getting confused sometimes about what the report was that he failed, that he refused to fill out. Sometimes it seems like we're referring to that as a workers' comp form or report. Now I understand it's not. It's just an accident report. Am I right that you have to file an accident report for every work-related injury regardless of whether you do or don't file a comp claim arising out of that? Oh, that's correct, Your Honor. It's required also if there's property damage. Let me make a distinction. In the briefs, Mr. Sharp's attorney talked about aches and pains, and we're not talking about every time you return to work and you feel tired you need to fill out a form. It says in these two places in the manuals that for if you have an injury or an accident, property damage, you must complete these forms. And the reasons for that, it's not just, hey, we want you to fill out these forms. I mean, there are a number of reasons for this. First of all, this is an industry where these guys are driving around 40-pound trucks. They're dealing with lifting materials all day long. It's a physically demanding job. They are impacting public safety. They've got these big trucks on the roadway. They're interacting with health and welfare of the public. So there are a number of factors at play. One, they want these issues reported promptly so they can investigate, one, whether they occurred. Two, was there a safety violation that could have been preventable that they could address? Waste management is very proactive in its safety training. For instance, in this situation, Mr. Sharp claims that he was told to pick up these heavy tree stumps, which would be a violation of waste management's haul and call policy, which says if it's too heavy to lift, put a tag on it. We'll come back, sort of double-team it later and get it. So if he had been instructed to do that in violation of the policy, that would be a disciplinary issue with the person who instructed. But by not reporting, they couldn't investigate that. They're also stripped of the ability to determine whether there are learning incidents that they need to do so there aren't future violations of this. They're stripped of the ability to investigate whether public safety was involved, stripped of the ability to evaluate whether there was a workers' compensation issue that they should report or a workers' compensation issue that they needed to investigate in order to respond to if there is a workers' compensation claim. So the fact that this is not done for seven months eliminates any ability for waste management to investigate any of those issues or deal with the safety issues or evaluate the training or address it with anyone else. So that's the importance. It's not just we have this rule and you have to follow it. It's a very important rule for waste management. And that's why Mr. Sharp admitted that he knew it was an important rule. That's why he admitted he had followed it in the past. That's why other employees admitted that they knew they needed to report incidents or they would risk being fired for not doing so. The record is just replete with that information. So it's a very important point. When we get to the end, did they give him the form the first time that he said he wanted to take home? The first time they knew that he was claiming there was an injury was on October 23rd. And Mr. Saunders brought him in the office to ask if he was claiming that there was an injury that was work-related. And when he said that there was, he asked him to complete the form. That form not being a workers' comp form, the accident report form that should have been filled out in March if he had had an injury. So that's the form that he took to the lawyer? Well, that's the form. So he had this form. He asked Mr. Saunders did not allow him to take it home. But it's, again, basically a two-question form. What's the date? What happened? So Saunders did not, in answer to Judge McKeague's question, Saunders did not allow him to take the form home? He did not allow him to take the form home. Is it the same form then that they presented the second time? It is. It is, Your Honor. And during that time? He says he didn't know what the form was. Did he have a chance to read the form the first time that they didn't let him take home? Your Honor, it's the same form he had completed in January of that year, and he knew what the form was. So there was no question. They referred to the incident report form. You suggest that he thought this was a form relating to your terminating. All I'm trying to figure out is whether they let him take it home or not. What does the record show with respect to whether he knew what the form was? They did not give him the form to take home, but it is the same form he had filled out previously on other occasions. And they referred to it as the incident report form, which is what it is known in the business. They hand him the form and say, fill this out. Yes. So he saw it. Yes. As far as we know. Yes. And it's the same form they gave him when he came back. Yes, Your Honor. That's what I'm wondering. And during that time, he had consulted with his attorney because he came back with correspondence from counsel. And I believe I'm out of time. Thank you very much, Your Honors. Your Honor, going to the issue of what was this form, Sharpe states, paragraph 36 of his affidavit, based on what Saunders told me, I concluded that the document was related to workers' comp. I didn't know, but I thought the document also might be a paper terminating me immediately from employment. Did he look at the form? I wasn't there, Your Honor. What does he say? His testimony is this, exactly what I read here in paragraph 36. So I guess the question is, if somebody had handed, we've got two situations here. If somebody had handed him a form and he read it, then would he have been, and it was the same form he'd used for reporting prior injuries, would he at that point, in your opinion, have been justified in refusing to fill it out? If he had an attorney? I don't know. If he goes into the office, they hand him an injury form that he's filled out in prior injuries, would he, at that point, what was his justification for refusing to fill out the same form that he'd filled out in the past, assuming that he looked at it and he knew it was the same form? If he had filed a workers' comp. claim and he was represented by an attorney who sent a letter saying that Saunders tried to... It was afterwards. The letter comes next, I thought. It was after the first meeting, but before the second one, when he got fired. First meeting. First meeting. You keep trying to change things, and if it's because my question is not clear, then I'll try to do better. He goes into the first meeting. They hand him a piece of paper, right? He refuses to sign it, or to fill it out, excuse me. Is that correct? Yes. So assuming that he read it, that's the first assumption I want you to make, and so he saw that it was the same form he'd filled out in the past, was he justified in refusing to sign it and fill it out at that time, seeing that it's the same injury report that he'd filled out in the past? Yes, Your Honor, he was justified. And what is the justification at that point? Okay, because he had a workers' comp claim, he was represented by an attorney, and in this case he thought that it was related to workers' comp or it was leading to immediate termination, and he asked merely to take it home and have his attorney look at it before he filed it. It was related to the substance of his workers' comp claim. That's what made him qualify for his public policy claim for wanting to consult an attorney, because the incident reports, Your Honor, are not necessarily required at waste management. The incidents of them not having incident reports are numerous. In the case of Robinson, he did not fill out an incident report. Gerardo did not fill out an incident report. Briggs did not fill out an incident report. Osborne was injured, and they asked him, he was injured twice, they asked him once, do you want to fill out a form? He filled out some, he said he scribbled out something but never turned it in. And that was the way the operation went. If the person was injured, they would, at the most, they would say, do you want to fill out a form? And if they don't fill out a form, they just drop it. And that's what happened with Osborne. And then we have the other incident with Bowman. Bowman was injured on the truck. He goes into profit. Any of those examples you gave, did the management ever hand somebody a form and say fill out this form? In all of these circumstances, I don't think they ever offered them a form. So if somebody is handed a form and management says fill it out, there may be a valid reason not to fill it out, I get that. But you still are refusing an order of your supervisor to fill it out if it's given to you and you're told to fill it out, right? Is that right? I would say yes, Your Honor. Come on. It's either yes or no. Yes, it's a refusal, but under the law, he has a right. Well, wait. You can say all that in a minute if you want. All I'm trying to figure out is the facts here. So you hand the form and you're asked to fill it out and you refuse. All I'm trying to figure out is whether these comparables you're pointing to were ever given a form and asked or told to fill it out. That's all I'm asking. As far as I know, they were not. And, in fact, they were discouraged from filling out forms. And I think that's one of the differences in the case. But we also go to this business of the incident form because this creates pretext in itself because the defendants do not even use this incident form as their reason for termination in the letter that was sent to him. They say that he refused to provide any information, and that is completely false. They don't even mention the incident report in the termination letter. That's exhibit number 41. They don't even mention it. The exact words are he refused to provide any information. He did provide information. The information that he provided was on Saunders' own report where he said that Sharp re-aggravated his previous injury loading trash. That was information that he got from Sharp. So their stated reason, refusal to provide any information, creates pretext in two ways. First of all, he did provide information. They got the information from him. And it also is a pretext because they put the incident report in. It's really hard to ask you questions in these long, run-on sentences. So I apologize for interrupting you, but I've got to get to it at some point because your red light's on. How or when did Saunders obtain the information that you say that Waste Management then had? How and when in the sequence of events, if you know, did that information become in Waste Management's possession? In the very first meeting on October 23, 2012. At the same time or when they asked him to do the incident report. But they got the information. So he did discuss what happened at the meeting. He just wouldn't fill out the form. That's what you're trying to tell us, right? Okay, I get that. Thank you. You provided the information. That's what they say. Okay, and your red light's been on for a long time, so we must stop. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call any remaining cases?